Good morning, Your Honors. May it please the Court, Opposing Counsel, my name is Jason Rayther. I represent Fresh Seasons Markets in this matter of the Appellants. This case is one that highlights the importance of the statute of limitations in encouraging a timely resolution of disputes to the benefit of the affected employers and employees. I would like to raise three main points throughout my presentation. Number one, that this statute of limitations is a substantive issue, substantive arbitrability that provides this bright line to the parties in the courts in determining when cases are timely. The District Court erred in adopting a holding that, in essence, creates a limitless statute of limitations that gives the union, or really any party, the unilateral power to select when to start the statute of limitations. That undercuts the entire purpose of the statute. Point number two, the standards stated in Bass and United Rubber, as we refer to them, can be synthesized to produce a consistent rule, which in turn requires dismissal of the union's case. The District Court erred in distinguishing United Rubber and related case laws hybrid cases, and in essence, it imposed a lower threshold to the union to bring these cases than it does to an unsophisticated employee who brings a hybrid case. Number three, the third point I'd like to make, is that the Court can and should interpret the CBA when necessary to determine when the statute of limitations begins. The District Court here refused to interpret the CBA, operating, assumingly, underneath the assumption that as soon as one looks at the CBA language, you're stepping into the role of the arbitrator. Well, let me ask you on that, your third point. I was attracted to your argument until I began reading the Eighth Circuit and U.S. Supreme Court cases that have words like, whether a demand is timely under a CBA is an issue of procedure or ability best left for an arbiter not a court, and that's an accurate statement of what this Court has said and what the United States has said. They've got even more words. Time limits, notices, latches, estoppel, and other conditions precedent to an obligation to arbitrate are for arbiters to decide. That's how some deem rentals, is the Supreme Court's words. And once I started reading that stuff, I thought, we don't even get to your arguments, really. Well, your Honor, the Eighth Circuit and through the Supreme Court has recognized that the issue of statute of limitations is substantive arbitrability. So we first have to start with the, we are looking through the lens of the statute of limitations. If we are raising questions about the six-month statute of limitations as stated in the NLRA, that is a substantive issue for the District Court to decide. That was in United Rubber, that was 104F3181, that's on page 183, that's an Eighth Circuit case from 1997. The Union cites a number of cases in 12 and 13 of their brief, and in every single one of those cases, the Court emphasizes statute of limitations, substantive issue, it's for the District Court to decide. We are not arguing that the grievance itself was untimely. We are not arguing issues about latches or some sort of waiver. But in this case, to decide the question, we have to take a deep look at the CBA, and isn't that contrary to the Supreme Court Wiley case? Well, your Honor, it is true that we do need to look into the CBA, but this Court has recognized the importance of delving into the CBA when it is necessary to interpret the statute of limitations. It did that in the Cook Chemical case that is cited in our brief. It did that in the United Rubber case. Other cases have similarly looked at this issue. We cited a case from the Eastern District of Pennsylvania. While not, I understand, a binding precedent on this Court is at least persuasive authority. But hasn't the Supreme Court said we should leave that to the arbitrator? The Supreme Court has said in the Willis case and in other cases that when it comes time to determining when a grievance was timely, that's an issue for an arbitrator. We are not making that argument. We agree with that proposition. If the issue is procedural arbitrability, is the grievance timely? Yes, that is for the arbitrator to decide. However, if the question is, is the motion to begin the statute of limitations, I'm sorry, is the suit to compel arbitration, is that timely? That is a question for the District Court. Before the union can get, or any aggrieved party can get to arbitration if it brings a suit, it needs to show that the suit itself is timely. If the suit itself is untimely, you don't even get to the point where you're arguing timeliness of the grievance or estoppel or issues like that. So I think that is an important distinction, and I think the union purposely conflates our arguments with procedural arbitrability. We are not arguing again that the grievance is untimely. But there are situations when it is important to open the CBA and figure out, well, when exactly did the statute start? Don't you have to figure out here, though, when the grievance was and when the refusal for arbitration was? You do that under your scenario and you have to do it under their scenario. You say it's automatic at a certain time, and they say it's real at a certain time, but doesn't that get you into procedural arbitrability, procedural issues immediately? Well, Your Honor, that leads directly to my second point. There are two standards we're looking at here. One is clear refusal to arbitrate, and yes, the district court may be required to make a factual determination when that occurred. That's what happened in Bass. When Bass was remanded, the district court was required to conduct an evidentiary hearing to figure out when this occurred. So the district court cannot avoid at least some sort of heavy lifting here when it comes to determining timeliness. Now, wait, wait. The district judge is ready for you on that one. The district judge said, well, there you had to because there's no other way to do it, and in this case, we've got all these different times that grievances are made and you refuse and things happen. Here we've got stuff to look at, and that's for the arbitrator to look at first. Well, and I appreciate that point, Your Honor. I would say that the district court frequently engages in this type of analysis. Whenever a district court needs to interpret statute limitations in the context of a breach of contract, the court needs to do exactly what we're asking them to do here. They need to look at the terms of the contract. They need to figure out when the breach occurs. This isn't a complicated, at least from our perspective, this isn't a complicated analysis the district court is somehow incapable of doing and that only the arbitrator is required to do. And further, I want to emphasize, we are not asking the court to engage in this far-reaching interpretation of the CBA. It is only on the very narrow issue of timeliness, and that's what the case law says. So United Rubber says that's what the Cook Chemical says. And unfortunately, what the union is and what the district court has adopted here is a standard that again allows us unlimited duration to the statute of limitations. Well, the district court says, yeah, but the arbitrator will laugh at that. If they come in 30 years later with something, that's what the district court says to you. The arbitrator will really just laugh, they'll all laugh, and that'll be the end of it. Well, and I appreciate that, and I'm hoping that's what would occur in one of those situations, but to rely on the arbitrator as some sort of a fail-safe to avoid these types of situations ignores the purpose of the statute of limitations in the first place. If the case law stated there isn't a statute of limitations, it all goes to the arbitrator, the arbitrator decides everything, we wouldn't be here today. But the case law from the Del Castello case from 1983 from the Supreme Court stated the six-month statute of limitations from an LRA applies to these types of actions. It's been subsequently interpreted to apply specifically to 301 actions under the LMRA to compel arbitration. If you have a statute of limitations, the district court needs to decide whether it's timely. The United Rubber case states very, I think, eloquently, if the district court has jurisdiction to hear the issue, the district court has jurisdiction to decide whether it's timely. Now, I acknowledge that United Rubber and Cook Chemical are hybrid cases, but if you look at Cook Chemical, you have this unsophisticated, presumably, I don't know the man, but employee that brings a case against the union and the employer, and the court says it's untimely. I'm going to read just a short section from Cook Chemical because I think it's very relevant to the argument we're making here. And that is, this is on 1241, notwithstanding the lack of an actual notice requirement, constructive notice of the existence of appellant's cause, again, that's employee of action, could be imputed to him by the operation of the collective bargaining agreement under which he worked. Now, the Eighth Circuit applied that standard to an employee. Well, if that standard applies to an employee, why shouldn't it apply to the union that has sophisticated counsel that understands the CBAs and can make the determination as to when to bring this action? As the facts laid out in our brief show, this is a case where the union sat on its hands and waited, and it was more than a year after the grievance that occurred that they actually brought the demand for arbitration, and then about another five months before they brought their case. What the union wants to do is to be given this ability to say, this is when the statute starts. We're going to wait. We're going to wait. We're going to wait. Now is when we're going to do it. Yes, hopefully an arbitrator will be there to say, sorry, that's untimely. That's too far. But it shouldn't even get to the arbitrator if it is held back by the statute of limitations. Now, of the cases cited by the parties, I believe only two deal precisely with this issue. One of them is the case cited by the union that's the United Steel, a ConocoPhillips case. That's one from North District of Oklahoma 2010. In that case, the court did recognize that there are two different standards. And in fact, the court stated, and I'm quoting from them, the court finds that the two Eighth Circuit rules are not necessarily in tension. And that's on 1322. So courts have looked at this. They recognize that there's these two rules out here that they're not necessarily in tension. Now, in that case, the court did look at clear refusal. But when it did the analysis underneath the United rubber standard, or as it refers to it, the Unisource standard, says, you know what? We would have still found it was untimely. This isn't a case where the court completely rejected the type of argument we're making here. In the rest of the cases cited by the union on pages 12 and 13 of the brief, I was not able to find a single situation where the only other case that I've seen cited by the parties that addresses this specific argument, that the CBA itself sets an outside limit at when you can bring a motion to compel arbitration, is the case that from the Eastern District of Pennsylvania. I know your honors have read it, so I'm not going to go into it in detail. But it adapts the precise argument we're making here and comes up, which I think is a really elegant formulation of the way to synthesize these two standards. I'm quoting from, this is from the Starshite Eight on there, where the grievance procedures outlined in the collective bargaining agreement provide that arbitration must be instituted within a specific time period. The expiration of this period, combined with employer failure to take any position with respect to arbitration, constitutes employers unequivocal refusal to arbitrate. This court looks at when this process is breaking down to the disadvantage of the employee. That's the same concern that motivated the circuit in Cook when it said that the statute of limitations starts, quote, at the latest when the time for the union to seek arbitration. Robert, the circuit said... Let me interrupt you. Thank you for your chronology on page six of your brief. Good advocacy. But I noticed you left out your refusing the demand for arbitration on June 24. You didn't put it on your chronology. And I think you'd have a case if you didn't have that, if your chronology was accurate and you had not refused the demand for arbitration. If you had just said on your hands and not refused, wouldn't you have a case where your rule might apply? Well, and that's part of the problem with the standard that the union is pushing for, Your Honor. To directly answer your question, it would be a better case if our client had never responded. Right. We would be in a better position if we just ignored the union's demand. That doesn't seem like the kind of... Now, are you subject to an unfair labor practice, though, if you do that? That's outside the scope of what I'm prepared to discuss today. Potentially, I... You don't know. You don't know and I don't know. I don't know. I'm sorry, Your Honor. Okay. We'll have the clerk find out. Go ahead. But the point being that at some point, the union and the employer should come to a clear determination as to what's going to happen because this affects the employees that are working for the employer. Doesn't that point begin when you tell them, we're not going to... That's the place to look at. Well, thank you for bringing me back to that. What the union is saying here is that we can decide when the statute of limitations starts. Here's how it works. We can wait and wait and wait. We can wait months. We can wait years. There wouldn't have been any reason to wait if there hadn't been an ongoing discussion of potential resolution of this. Well, we would argue that there wasn't an ongoing discussion at a certain point. If there's evidence you're hearing occurred or whether... Well, it definitely occurred when you said no and that seemed to be when they acted. Well, there was a definite point where there was a refusal and the refusal occurred when the union made a formal demand for arbitration. There are some cases where employers preemptively refused. That was the Unisource case where they preemptively refused arbitration, but that is the problem with what the union is arguing here is that we can trigger the refusal whenever we want. Let's say we wait years and then we ask for it. As soon as the employer refuses, boom, the statute starts there. What it does is undermine the entire purpose of the statute of limitations. Yes, there was a clear refusal. The clear refusal was well past the deadlines that set forth in the CBA. So you should do nothing or quickly refuse arbitration, right? If you're the employer, that's what you ought to do. That's what we ought to do. And as the union, what you should do is bring the lawsuit in a timely fashion instead of waiting. If in the instance where an employer is dithering or sitting on their hands and not responding, you look at the CBA and six months out, you better have that lawsuit up and running. And that's not what happened here. And that's why I think the union's case should be dismissed. I'm just going to reserve the rest of my time for rebuttal. Thank you, Mr. Rather. Mr. Loris. Thank you. May it please the court. Counsel, my name is Tim Loris. I represent the appellee defendant, United Food and Commercial Workers, Local 653 in this case. Now, the sole issue on appeal is whether or not this lawsuit was filed within the applicable six-month statute of and in literally every other circuit in the nation. The rule that applies in a section 301 action to compel arbitration like this is that the statute of limitations period begins running when the employer refuses a demand for arbitration. That comes out of the Bass v. City of Sioux Falls case, which we cite throughout our briefing. In this case, this is undisputed. The demand occurred on June 11th of 2015. You can find that at the appendix page 220. And the employer's clear refusal occurred on June 24th, 2015. You can find that at page 66 of the appendix. This suit was then filed on October 2nd, 2015, less than four months later, well within the six-month statute of limitations period. You agree, though, that if they had not refused you on June 24, you'd be under a different rule and you'd be long past time? Well, those aren't the facts we're dealing with here, so I don't think the court has to go there, but... Yeah, but it does undermine your position. I don't agree. So even if we use their standard and we say, okay, without a refusal, you have to look at the contract to determine the last date that arbitration could have been requested. We're still within the time period because the grievance was filed and the demand for arbitration was made on June 11th. Even if they hadn't responded, you still look at the union have to demand arbitration. Here it's a 10-day period. So that still would have been in June of 2015. Now their response is, yeah, but your grievance should have been filed back in May of 2014. Now we've gone beyond the jurisdiction of this court and what we should be analyzing. Now we're looking at timeliness of the grievance, which is... And this is where it's critical to understand the difference between the statute of limitations analysis and the timeliness of the lawsuit and the procedural arbitrability analysis of timeliness of the grievance and adherence to the contractual grievance procedure. So appellant's response in that case, they say, yeah, well, your grievance should have been filed in May of 2014. That is a procedural arbitrability legal conclusion. It is not a fact that should not be made in an action to compel arbitration. And if they truly thought the grievance was untimely, they can tell that to the arbitrator. So even under their united rubber analysis, I would submit that we're timely in this case. Now, rather than applying the BAS standard, the clear BAS standard, easy to apply, clear facts, the appellants urged the court to create and utilize a brand new standard never before utilized in this circuit or any other circuit. And I'm reading from page 24 of the appellant's brief. This is the standard they want the court to adopt. This is the synthesis of united rubber and BAS. This is out of their brief quote, unless the employer clearly refuses to submit to arbitration at an earlier point, the statute of limitations begins to run on the last date the arbitration could have been timely requested under the CBA, page 24 of their brief. Now, you can see on its face, if this rule were adopted, courts could not determine the statute of limitations in a section 301 action to compel arbitration without determining the last date to request arbitration. And this is where it's critical, again, to understand procedural arbitrability versus statute of limitations. Before you go there, isn't that usually pretty easy, though, to look at the actual day period? Figuring out the day period's not tough. The time period for filing the grievance? Yeah. Sometimes, but not always. Yeah. In this case, it's easy, right? In this case, well, that's a good question, Your Honor. Now, the appellants did not raise the fact in their argument that we arbitrated this case back in May. And we put all these facts to the arbitrator. We had a full day hearing on this timeliness issue. And the arbitrator found, in fact, May 9, 2014 was not the last day that this grievance could have been filed. Due to many other factors, the arbitrator found, essentially, on estoppel grounds that they couldn't raise that argument. And I'm happy to submit the arbitration award that we received in this case, finding that the grievance was timely, timely filed. So this timeline, and this is where, you know, if we're going to apply the appellant's proffered standard here, we're going to have to look at what is the nature of the grievance. You're going to have to determine that, because there are different timelines in the contract, depending on the type of grievance we have. If it's a grievance about . . . If you'd waited 45 years and brought this case to Judge Schultz, and he'd thrown you out, I mean, the company's changed names, and your union's changed, and I don't have to tell you. Would you be here? I would be here. Oh, you would be here. We bring a grievance 45 years late, I would presume there's a good reason. Maybe the employer concealed evidence. You know, I'm sort of hypothesizing here. Yeah, I bet you are. Go ahead. If it's a terrible case, and I'm giving my union client bad advice to take it to arbitration, I would presume the employer would come in and dunk the ball on us, and we would lose that case. But as Judge Schultz said in his decision, making that argument in the proper forum is not absurd. It may be absurd to file a 45-year-old grievance, but make that argument to the arbitrator. Don't force it into the courts, where then the courts have to send you into arbitration. You're just wasting time. So to answer the question on a 45-year-old grievance, I still think Judge Schultz would have gotten the result correct on this ruling. He said, go tell it to the arbitrator. That, I think, is the essence of Judge Schultz's award, and I think it's exactly right. And so... Doesn't your position create sort of a perverse incentive for employers just to ignore requests for arbitration? Possibly. Again, those facts aren't on this case. I would argue that in the case where an employer in bad faith just goes silent, they wouldn't get the benefit of a more favorable statute of limitations rule. Myself, if I were in the situation where an employer just goes silent, I would send a letter by certified mail saying, if I don't hear from you by X date, I'm going to assume that you're refusing. And I would argue that that is the date that the court should look at, rather than getting into all these timeliness issues. Well, Lurk, it's the contrary. Either going silent, which would, as you notice, their scenario leaves out their refusal to demand, or doing it immediately. What about the employer doing that immediately? Immediately refusing arbitration? Yeah, immediately refusing arbitration. Sure, they could refuse arbitration. But you'd claim that's an unfair labor practice, wouldn't you? I wouldn't claim that's an unfair labor practice. I would say that's a contract violation, and that's the difference. So with the collective bargaining agreement, they have an arbitration agreement, usually folded in. When they refuse to arbitrate something that they've agreed to arbitrate, that's a violation of the contract that would be subject to a section 301 action, which is essentially what a section 301 action is. It's a breach of contract. But you'd have to bring it early, in that case. We'd bring it within six months of the refusal. Bring it real early. We'd bring it real early, yeah. We'd bring it within six months of the refusal. But again, this case, we have a clear demand and a clear refusal. And if you look at Appellant's brief, their entire statute of limitations argument is built on this chronology that they've made. And so on page six, you see Judge Benton, you pointed this out. They also go through it in a narrative fashion on page 25 of their brief, where they say that February 21, 2015 was the date that the statute of limitations expired in this case. The only way they get to that date is by first concluding, they set forth this procedural arbitrability legal conclusion as an undisputed fact. And this is critical to understand. When the appellants say that May 9, 2014 was, quote, the last possible date that the alleged violation could have occurred, that's not an undisputed fact that goes to statute of limitations. That is a procedural arbitrability legal conclusion for the arbitrator to make. And so they build their chronology from there. They say, because this is a case, this is a grievance for accrued vacation and personal holiday, the 90-day statute of limitations or grievance filing period applies under the contract. And so they say from May 9, 2014, that takes us to August 7, 2014. Again, a procedural arbitrability legal conclusion as to the deadline that applies. And by the way, the arbitrator disagreed with them on that, too. The arbitrator concluded... It sounds like you had a good arbitrator, because you'd filed a charge with the NLRB but then, and you failed to request arbitration the end of August. We filed a charge for the refusal to engage in effects bargaining. Back in August of 2014. Which was much different than a refusal to arbitrate. We made a demand to engage in effects bargaining when those stores closed about the effects on the workers from the store closing. That was the charge that was filed. It had nothing to do with arbitration. That came much later. And by the way, there were ongoing discussions throughout 2014 about this case, where the employer made representations that it still intended to pay the money. I shouldn't ask, but I'm going to ask. How did you amend it on August 28? Yeah, what did you add when you amended your charge on August 28? You're testing my memory, but I believe we amended the charge to add a failure to provide requested information. Oh, information. Yeah, information about the amount of money. I thought you were going to say a failure to bargain. No, no. The first, I believe, the first charge was failure to bargain, and the amendment was failure to provide information. And that information was later provided. There were meetings down the line about the money that was owed to the employees. Again, all of this is outside the realm of the suit we have here, which was simply an action to compel arbitration of the grievance. Getting back to the timeline, every point in that chronology that they conclude is undisputed was overruled by the arbitrator. The arbitrator found this case to be timely. And I'm happy to provide- Well, you mean the facts happened. You and I agree they happened, right, with what I'm talking about. When they say that August 7, 2014 was the last date that this grievance could- Yeah, I get the legal conclusion, but you did file a charge on that day. I don't recall the exact day that it was. Yeah, yeah. August 7, you filed a charge. And we filed an unfairly- And you amended it on August 28. That stuff's right. You mean the conclusions are wrong. Oh, sure. Yeah. As they relate to this grievance. Correct. Go ahead. I'm sorry. Proceed. Yeah, yeah. So in my brief, I make the argument that at its core, the appellants are making a disguised procedural arbitrability argument. They're saying the grievance is untimely. Therefore, the lawsuit must be untimely too. And those are two very distinct and different arguments to make. Now, with the statute of limitations analysis, where there is a demand and a refusal, the law throughout the nation is that the six-month period the claim accrues when that refusal takes place. That's the facts we have here. There's clearly applicable law from the Eighth Circuit, from the U.S. Supreme Court that applies. And this is an easy case with an easy outcome. I just want to touch on the United Rubber case, which the opposing counsel relies very heavily on. It's true that in the United Rubber case, the court engaged in an analysis of the contract. That's true. I'm not going to deny that. The only reason they did it in that case, and this is very explicit in their decision, in fact, I'll just read it. The quote from the court is that- What page are you on or what head note or how do you do it? This is on page 185 of the court's decision. Go ahead. They say, reference to the terms of the CBA, they go on, was unavoidable because the record contains no clear demand for or refusal of arbitration from which to calculate the limitations period for this cause of action, unquote. No, no demand, no refusal. So the court said, well, we have to look at something. And so they engaged in a limited analysis of the collective bargaining agreement to come up with the date that arbitration could have been demanded. The implication and I think the holding in the Bass case is that you don't do that where you don't have to. And if you read the US Supreme Court's John Wiley decision, the court is very clear that courts are not to be engaging in interpretation of collective bargaining agreements as it relates to procedural arbitrability issues where they don't have to. Once the substance of a grievance is determined to be arbitrable and there's a valid agreement to arbitrate, that's it. Timeliness about the grievance, whether there was waiver, latches, et cetera, is all brisked in the middle of the arbitrator. That is the bread and butter of arbitrators. And those kinds of issues come up all the time. And so here, to use appellant's rule, again, getting back to the timeline, the court would have to determine the nature of the grievance because there are different deadlines depending on the nature of the grievance. Second, the court would have to determine, as the arbitrator did, when did the violation occur? Now, that can be affected by things like the continuing violation doctrine. It can be complicated by employer efforts to conceal their violation. There may be a question about when the union had notice. All that's going to have to get resolved in the courts just to determine when the statute of limitations started running under the appellant's rule. And potentially in a jury trial, just to determine statute of limitations any time that question gets raised, where we have a clear rule in Bass that if you have a demand and a refusal, that's when the claim accrues, that's when the statute of limitations starts running. Do you think United Rubber is correct? United Rubber is the law of the circuit. No, that was a different, I ask a different question. I believe it's correct that when there's no demand and refusal, the court has to look at something. And in that case, the court looked at the contract in a limited fashion to determine when was the last date arbitration could have been requested. But the court was clear in that case that that analysis was unavoidable. And it also cites the language about engaging in limited interpretation of the contract and how that's disfavored in the Eighth Circuit. And again, if appellant's rule gets adopted, courts are going to have to engage in a procedural arbitrability analysis in every case where statute of limitations gets raised. That flies in the face of John Wiley and Sons, the U.S. Supreme Court case, the House M case. Judge Benton, I think you raised. And prior Eighth Circuit cases that we cite in our brief, the Town and Country Ford case and the Iron Workers v. AFCO case. And these are on pages 19 through 21 of our brief. Clear Eighth Circuit case law that courts are not to engage in this type of interpretation of collective bargaining agreements, appellants are asking you to do it in every case. And unless there are other questions, I've run out of time and I'll rely on my briefs. All right. Thank you, Mr. Lawrence. Thank you. I see no questions. Mr. Rather? Your Honor, I would like to address the last point that Mr. Luries made. The courts are only going to be required to make this determination when the union fails to bring an action within a timely manner. If the union had brought an action within six months after the end of this period indicated in the CBA, we wouldn't be here. The court would not be required to open the contracts to look at it. United Rubber, yes, was in a situation where there had not been a clear refusal. But the purpose and the premise underlying United Rubber is that there needs to be a stop point. There eventually needs to be a point where the courts say this is too long. And in the Cook chemical case, as the courts are there, it's when this process breaks down to the employee's disadvantage, which happens at the latest when the time to bring, when the time to compel arbitration ends, according to the CBA. Now, Mr. Luries mentioned the arbitrator's decision. It probably comes as no surprise that I disagree with the arbitrator's decision. The decision relied on a lot of arbitration common law, but the arbitration decision really has no bearing on the court's decision here when the issue is whether the motion to compel arbitration was timely in the first place. The union didn't raise those issues before the district court regarding a stop or waiver, and that they're thus waived in this situation. I'm out of time, so we'll have to rely on my briefs, unless your honors have any questions for me. I see none. Thank you. Thank you, Mr. Rayther. Thank you also, Mr. Luries. Court appreciates both counsel's presence this morning, the argument that you provided to the court, and the briefing that you've submitted. We'll take your case under advisement and render the decision as promptly as we can. Thank you both.